MASCARI *v.* NEW YORK, CHICAGO AND ST. LOUIS RAILROAD COMPANY.

[No. 14,469.   Filed January 26, 1933.   Rehearing denied May 19, 1933.]

*Jessup & Strode,* for appellant.

*McClure & Elliott,* for appellee.

SMITH, J.—Appellant brought 'this action in the Howard Circuit Court to recover damages against appellee on account of an injury to a carload of bananas, shipped from New Orleans to appellant at Kokomo, Indiana.

The issues were formed upon a complaint in one paragraph and an answer in general denial. Upon the issues so presented, the case was tried by the lower court without a jury and a general finding for appellee and judgment rendered thereon. The only error assigned is the overruling of the motion for a new

trial which calls in question that the finding of the court is not sustained by sufficient evidence and is contrary to law.

Appellant purchased a carload of bananas from a wholesale merchant in New Orleans and alleges in his complaint that he delivered to the Illinois Central Railroad Company at New Orleans on November 14, 1928, the bananas in question and same were loaded in a railway car and accepted at New Orleans, Louisiana, on said date by the Illinois Central Railroad Company, for transportation and delivery to appellant in Kokomo, Indiana; that the Illinois Central Railroad Company (the initial carrier) issued and delivered to appellant a through bill of lading for said shipment to Kokomo, Indiana.

Appellant further alleged in his complaint that said carload of bananas arrived at the city of Kokomo, Indiana, in an injured and deteriorated condition; and that such condition was caused by the negligent acts of appellee in failing to transport and deliver said car within a reasonable time, and in failing to notify appellee promptly of the arrival of said car in the city of Kokomo and to care for said shipment properly after its arrival in the city of Kokomo; and that, as a direct result of said negligent acts, the appellant was damaged.

This was an interstate shipment and appellee was a connecting carrier. The shipment, therefore, is governed by the Federal Law; namely, the Carmack Amendment. Quoting from a decision of the United States Supreme Court, the court says:

"It is established doctrine that the rights and liabilities in respect of damage to goods moving in interstate commerce under through bills of lading depend upon acts of Congress, agreements between the parties and common-law principles accepted and enforced in the

federal courts. *New York C. & H. R. R. Co.* v. *Beaham* (1916), 242 U. S. 148, 151, 61 L. Ed. 210, 216, 37 Sup. Ct. Rep. 43. While this court has not expressly approved it, we think the common-law rule, supported both by reason and authority, is correctly stated in §1348, vol. 3, Hutchinson on Carriers, third edition:

"A connecting carrier, who has completed the transportation and delivered the goods to the consignee in a damaged condition or deficient in quantity, will be held liable in an action for the damage or deficiency, without proof that it was occasioned by his fault, unless he can show that he received them in the condition in which he has delivered them. The condition and quantity of the goods when they were delivered to the first of the connecting carriers being shown, the presumption will arise that they continued in that condition down to the time of their delivery to the carrier completing the transportation and making the delivery to the consignee, and that the injury or loss occurred while they were in his possession." *Chicago and Northwestern Railway Co.* v. *C. C. Whitnack Produce Company* (1921), 258, U. S. 369, 42 S. Ct. 328, 329, 66 L. Ed. 665, 667.

There was evidence in this case to show that this shipment was received by the initial carrier in good condition, and that the shipment was turned over to appellee at Indianapolis, Indiana, and by it transported to Kokomo, Indiana. There is no direct testimony to show in what condition the shipment was when it was turned over to appellee at Indianapolis, Indiana, but under the law the condition of the bananas being shown when received by the initial carrier, the presumption will arise that they continued in that condition to the time of their delivery to appellee. The evidence shows that this shipment arrived in the city of Kokomo over appellee's railroad on Saturday,

November 17, shortly after 10:00 a. m. and about 11:15 a. m., or within about one hour of arrival, this car consigned to appellant was delivered by appellee to what was known as the "interchange," or "exchange" track. This interchange track connects with the Pennsylvania Railroad upon which appellant has a spur, or side track, leading from the Pennsylvania track to his warehouse. It was the custom in receiving carload shipments for appellant that the cars be delivered by the appellee to this interchange track and, from there, taken by the Pennsylvania Company to appellant's spur at his warehouse.

Appellee, after delivering this car to the interchange track, notified the Pennsylvania Company of its placing the car upon the interchange track and the Pennsylvania Company, at about 1:15 p. m., of the next day, Sunday, November 18, delivered the car to the spur or side track of appellant where it remained until it was unloaded by appellant late the next day, November 19.

There was evidence that the appellee, when the car arrived in Kokomo, immediately telephoned to the office and warehouse of appellant and notified appellant's servant that this car had arrived; that appellee mailed a postcard to appellant about 11:00 a. m. the same day shipment arrived and about one hour thereafter, advising appellant that this car had arrived.

Appellant claimed that he did not receive either the telephone notice or the postcard advising him of the arrival of the shipment. Appellant testified that on Sunday, November 18, about 11:00 a. m., he went to the car and opened the vents. This car had been shipped from New Orleans and was accompanied by a messenger, the agent of consignor and consignee, and said messenger, when the car arrived at Effingham, Illinois, while still in charge of the initial carrier, wired appel-

lant that the car had the vents closed and the plugs out, and that appellant should protect the shipment.

That this shipment was in a damaged condition when it was unloaded, there is but little question, but, as to who caused the damage and in whose possession the car was when the damage occurred, there is a conflict in the testimony. There was also a conflict in the testimony as to the condition of the bananas in the car when it arrived in Kokomo.

There being conflict in the testimony as to the condition of the shipment when received in Kokomo as to whether the damage occurred while in possession of the appellee, and as to whether the damage to this shipment occurred on the line of the appellee, this court will not weigh the testimony to determine such conflict. *Payne* v. *Cravens et al.* (1931), 92 Ind. App. 197, 174 N. E. 712.

"As to connecting carriers concerned in handling such shipment en route, they are not primarily liable, unless such loss, damage, or destruction occurs on their line." *Baltimore & Ohio R. R. Co.* v. *Maurer* (1920), 73 Ind. App. 296, 303, 127 N. E. 294, 296.

There being evidence to support the finding of the court, and the same not being contrary to law, the judgment of the lower court is hereby affirmed.